**PARTNERS IN NUTRITION'S APPEAL OF DISAPPROVAL OF SITE EXPANSION IN the CACFP PROGRAM**

A16-1422

Court of Appeals of Minnesota.

FILED July 3, 2017

Ll. Rhyddid Watkins, Faegre Baker Daniels, LLC, Minneapolis, Minnesota (for relator Partners in Nutrition)

Martha J. Casserly, Jason Marisam, Assistant Attorneys General, St. Paul, Minnesota (for respondent Department of Education)

Considered and decided by Worke, Presiding Judge; Jesson, Judge; and Smith, John, Judge.*

## OPINION

JESSON, Judge

Relator Partners in Nutrition challenges a decision by respondent Minnesota Department of Education (MDE) denying relator's application to sponsor multiple sites under the federal Child and Adult Care Food Program (CACFP) based on a determination that Partners in Nutrition is not a financially viable organization. Because MDE's rejection of Partners in Nutrition's application does not comply with federally required procedures and legal standards and is arbitrary and capricious, we reverse and remand.

## FACTS

Relator Partners in Nutrition is a Minnesota nonprofit corporation formed for the purpose of participating in the federal Child and Adult Care Food Program (CACFP). On August 18, 2015, Partners in Nutrition began an application process with MDE to become a sponsoring organization under CACFP.

Pursuant to procedures then applied by MDE, Partners in Nutrition began the application process by submitting a letter of intent. On September 17, 2015, MDE approved the letter of intent, which authorized Partners in Nutrition to submit a management plan and apply to be a sponsor beginning with a single site. MDE approved Partners in Nutrition as a single-site sponsor on November 5, 2015.

Under the next step of its application procedures, MDE considered whether Partners in Nutrition could be approved to expand from a single-site sponsor to a multi-site sponsor. The parties engaged in a series of discussions related to Partners in Nutrition's financial viability. Because Partners in Nutrition was a new organization, MDE indicated that it would review Partners in Nutrition's application based on financial projections for its anticipated operations under the CACFP. In addition to submitting financial projections, Partners in Nutrition informed MDE that it anticipated a $100,000 gift from one of its founders and her husband.[1] And Partners in Nutrition informed MDE of significant sources of revenue separate from its ex-

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. Partners in Nutrition asserts that it also attempted to inform MDE of a $1 million forgivable line of credit during these discussions. The incomplete record provided by MDE reflects that the line of credit was discussed during the first administrative appeal, but does not clearly establish when the line of credit was first disclosed.

pected CACFP revenue (non-program revenue).

MDE issued a written denial of the request to expand to multiple sites on January 11, 2016. The denial letter stated that "PIN [Partners in Nutrition] has been unable to demonstrate that it has adequate sources of funds to operate CACFP on a daily basis, to continue to pay employees and suppliers during periods of temporary interruptions in program payments and/or to pay debts when fiscal claims have been assessed against the institution." MDE further expressed its "concerns about dependence on federal food program reimbursement being the primary source of income for a new organization."

Partners in Nutrition took an available administrative appeal to an MDE appeal panel. On the issue of financial viability, Partners in Nutrition submitted an expert report and expert testimony detailing its expected revenues from sponsored centers and expected reimbursements. The expert testified to his professional opinion that Partners in Nutrition was financially viable and would be even if limited to CACFP revenue. Partners in Nutrition also offered testimony regarding anticipated funding from grants, anticipated nonprogram revenue, and its line of credit.

On April 26, 2016, the appeal panel issued a decision concluding that MDE had erred in several respects, reversing MDE's decision, and remanding the matter for redetermination of Partners in Nutrition's application. The appeal panel determined that MDE's application process was inconsistent with federal regulations; that MDE failed to "set forth specific criteria it uses to determine whether sponsors are financially viable"; and that MDE used inconsistent methodology throughout the application process and communicated with Partners in Nutrition in a confusing manner. The appeal panel also stated that

MDE had erred by relying on financial projections in reviewing Partners in Nutrition's application. The appeal panel directed MDE to redetermine Partners in Nutrition's application in a manner consistent with federal regulations.

Following the appeal panel's remand, MDE sent a letter to Partners in Nutrition on May 3, 2016, requesting Partners in Nutrition to submit a current year-to-date balance sheet, a current year-to-date income statement, and a current cash-flow statement. MDE also articulated the following as the methodology it would use to determine whether Partners in Nutrition was financially viable:

- Current ratio (Ratio 1:1)—Current Assets/Current Liabilities
- Cash on hand (at a minimum it must not be a negative)—Cash and Short-term investments/Daily Cash Required
- Debt Ratio (Ratio of 2:1)—Total Liabilities/Total Unrestricted Net Assets

After that letter, the parties exchanged additional correspondence, in which Partners in Nutrition objected to the new methodology as inconsistent with federal regulations and otherwise unsupportable, and MDE reiterated its requests for the financial documents. On May 23, 2016, Partners in Nutrition provided a balance sheet, but Partners in Nutrition refused to provide any additional documents and demanded a decision on its application.

On June 16, 2016, MDE issued a letter again denying Partners in Nutrition's request to expand from a single site to a multi-site sponsor. MDE concluded that the balance sheet submitted by Partners in Nutrition was insufficient to demonstrate financial viability and that, "[b]ecause PIN refused to submit the required current year-to-date income statement and cash flow statement as part of a complete set of financial statements ..., [MDE] is unable

to calculate financial ratios needed to make a finding of financial viability." MDE did not address any of the documentation submitted by Partners in Nutrition in advance of the March 28, 2016 appeal panel hearing, noting that the appeal panel's decision "was clear that MDE[ ] cannot use projections to determine financial viability."

Partners in Nutrition took a second administrative appeal, this time waiving an administrative hearing. On August 18, 2016, the appeal panel issued a decision upholding the denial of Partners in Nutrition's request to expand to a multi-site sponsor. The appeal panel affirmed MDE's determination that Partners in Nutrition failed to demonstrate financial viability by refusing to submit all of the requested financial documents. And the appeal panel rejected Partners in Nutrition's arguments that the documentation submitted before the March 28 hearing demonstrated financial viability. In particular, the panel found irrelevant to the financial-viability determination financial projections submitted by Partners in Nutrition's expert and evidence regarding Partners in Nutrition's $1 million line of credit, anticipated annual revenue, and comparison to other applicants. The appeal panel finally stated that Partners in Nutrition's challenges to MDE's new methodology are "moot" because MDE was unable to apply its criteria because of Partners in Nutrition's failure to submit documents.

This certiorari appeal follows.

## ISSUE

Is MDE's decision denying Partners in Nutrition's CACFP application based on erroneous theories of law or arbitrary and capricious?

## ANALYSIS

■ "On certiorari appeal from a quasi-judicial agency decision not subject to the [Minnesota] Administrative Procedure Act, we examine the record to review questions affecting the jurisdiction of the [agency], the regularity of its proceedings, and, as to the merits of the controversy, whether the order or determination in a particular case was arbitrary, oppressive, unreasonable, fraudulent, under an erroneous theory of law, or without any evidence to support it." *Anderson v. Comm'r of Health,* 811 N.W.2d 162, 165 (Minn. App. 2012) (quotation omitted), *review denied* (Minn. Apr. 17, 2012). Partners in Nutrition asserts that MDE's decision is based on errors of law and arbitrary and capricious.[2] Before turning to those arguments, we begin with an overview of the CACFP and governing federal regulations.

The CACFP, administered by the U.S. Department of Agriculture (USDA), was adopted as part of the National School Lunch Act to provide reimbursement for nutritious meals served to children and adults in day care. 7 C.F.R. § 226.1 (2016). Federal funds are disbursed to state agencies that are charged with accepting applications for participation and making reimbursement to approved institutions, which may be the facilities providing care or sponsoring organizations that provide meals or facilitate reimbursement to facilities. *See id.* § 226.2. MDE is the Minnesota agency that receives funds and makes reimbursements under the CACFP. *See* Minn. Stat. § 127A.09, subds. 1, 2 (2016) (authorizing commissioner of education to receive and administer federal funds and adopt state plans requisite to receiving funds).

2. Partners in Nutrition separately asserts that MDE's decision is unsupported by substantial evidence, but its arguments in this regard are redundant of its arguments that the decision is arbitrary and capricious, and more properly analyzed as the latter.

State agency administrative responsibilities for the CACFP are governed by 7 C.F.R. § 226.6 (2016). State agencies must establish application procedures and approve applications by institutions that meet performance standards set out in the regulations and deny applications by institutions that do not meet the standards. *Id.* § 226.6(b), (b)(1)(xviii). "[T]he State agency should use its discretion in determining whether the institution's application, in conjunction with its past performance in CACFP, establishes to the State agency's satisfaction that the institution meets the performance standards." *Id.* A state agency must notify an institution in writing of the approval or disapproval of its application within 30 calendar days of receipt of a complete application. *Id.* § 226.6(b)(3).

Among the performance standards, institutions must demonstrate that they are "financially viable," by documenting (1) need for services and plan for recruitment; (2) financial capability; and (3) administrative budgets. *Id.* § 226.6(b)(1)(xviii)(A)(1)-(3). At issue in this case is whether Partners in Nutrition established financial viability, and particularly whether it demonstrated that it "has adequate financial resources to operate the CACFP on a daily basis, has adequate sources of funds to continue to pay employees and suppliers during periods of temporary interruptions in Program payments and/or to pay debts when fiscal claims have been assessed against the institution, and can document financial viability (for example, through audits, financial statements, etc.)." *Id.* § 226.6(b)(1)(xviii)(A)(2).

The USDA has provided guidance on applying the financial-viability standard, both in its responses to comments during rulemaking and in a publication, *Guidance for Management Plans & Budgets, A Child & Adult Care Food Program Hand-book* (USDA Dec. 2013) (hereinafter *Handbook*).

In adopting amendments to the CACFP regulations in 2011, the USDA characterized as "largely accurate" the belief of numerous commentators that the CACFP is "intended to be 'self-sufficient;' in other words . . . that all resources needed to operate CACFP should come from Program reimbursements." 76 Fed. Reg. 34542, 34545 (June 13, 2011). Program reimbursements include, for example, payment of sponsoring institutions' administrative expenses up to 15% of the total amount their sites receive. 7 C.F.R. § 226.16(b)(1). There are a few caveats to the general self-sufficiency assumption. The USDA stated that "there are a number of one-time and recurring expenses for which Program funds may not be used, including the costs of incorporation, the preparation of annual IRS-990 reports, fines and penalties, and some other general business costs." Fed. Reg. at 34545. And the USDA made clear that non-program funds may be necessary to pay for unallowable administrative costs: "The [USDA] does not expect sponsors to reimburse providers if Federal reimbursement is unavailable. However, a sponsor must still have a source of non-Program funds with which to compensate its employees and pay its suppliers." *Id.* at 34546.

But the USDA further stated that it "would not advise a State agency to deny an institution's application *solely* because it lacked a source of non-Program revenue," although "the institution itself should be eager to have such funds on hand, since its existence as a viable entity, and its continued ability to provide Program benefits to children, may depend on it." *Id.* In response to the comments regarding self-sufficiency, the USDA amended 7 C.F.R. § 226.6(b)(1)(xviii)(a)(2), replacing language requiring that an institution "has

adequate sources of funds to withstand temporary interruptions in Program payments and/or fiscal claims against [it]" with the current language requiring continued payment of employees and suppliers during temporary interruptions in program payments, and ability to pay fiscal claims. *Id.* In sum, the USDA makes it clear that sponsoring organizations may rely on CACFP reimbursements as their primary source of funding.

Consistent with this direction, the *Handbook* advises state agencies assessing financial viability to determine whether an institution has or reasonably expects to attain a sufficient number of sponsored centers to support its expenses; whether it has correctly estimated the reimbursement it is likely to receive; whether it has identified the expenses of operating the business beyond food service; whether there are sufficient recruiting opportunities to support approving an additional sponsoring organization; whether there are adequate resources to pay employees during periods of temporary interruptions in CACFP payments and to pay debts and fiscal claims (with non-program funds); whether the institution can document financial viability; and whether the budget contains costs that are reasonable, allowable, and documented. *Handbooks.*113-14.

## I. MDE's decision is based on errors of law.

 Partners in Nutrition argues that MDE's decision is based on erroneous

views of the law regarding both the procedures and legal standards to be applied to a CACFP application under the federal regulations. We review de novo MDE's interpretation of the CACFP regulations that it is charged with administering. *In re Cities of Annandale & Maple Lake NPDES/SDS Permit Issuance for the Discharge of Treated Wastewater,* 731 N.W.2d 502, 516 (Minn. 2007). Because the applicable regulations are not ambiguous, we "need not defer to [MDE's] interpretation" of those regulations and "may substitute [our] own judgment." *Id.*

### Application Procedures

 MDE is charged by the regulations to establish an application process and approve or disapprove applications based upon the standards articulated in the federal regulations. 7 C.F.R. §§ 226.6(b), (b)(1)(xviii). MDE has established a multi-tiered application process, requiring an institution to first, submit a letter of intent; second, apply to sponsor a single facility; and third, after their single-site application is approved, apply to expand to sponsoring multiple facilities. Although the regulations afford MDE some discretion in setting up the application process,[3] nothing in the regulations supports limiting an applicant to sponsoring one facility pending further review by MDE. Rather, the regulations provide for a unitary application process, through which an institution is approved as a sponsoring organization. *See generally* 7 C.F.R. § 226.6(b).[4] Accordingly, we agree

---

3. The appeal panel stated in its first decision that MDE's requirement for a letter of intent was not authorized by the federal regulations. The letter-of-intent requirement is not at issue on appeal, and we take no position on whether the requirement is within MDE's authority as a state agency charged with establishing application procedures.

4. Beyond the absence of any reference to a tiered approval process, we note that the reg-

ulations require state agencies to ensure that new sponsoring organization has "sufficient staff to perform required monitoring responsibilities at *all* of its sponsored facilities" and that sponsoring organizations of day care homes submit information on "[t]he total number of children in *all* homes in the sponsorship." 7 C.F.R. § 226.6(b)(1), (b)(1)(ii)(A) (emphases added); *see also* 7 C.F.R. § 226.2 (defining "sponsoring organization" as organ-

with Partners in Nutrition that MDE's decision is based on an error of law in this regard.

 Nor has MDE, as best we can discern from this record, established the factors that it will consider in determining whether a new sponsoring organization has sufficient staff to perform required monitoring responsibilities, as required by federal regulations. *See* 7 C.F.R. § 226.6(b)(1). Such statements of future effect must generally be formally promulgated as administrative rules. *See* Minn. Stat. §§ 14.02 (defining rule as "every agency statement of general applicability and future effect ... adopted to implement or make specific the law enforced or administered by that agency"), .05 (2016) (requiring rules to be promulgated).[5] As a result, MDE failed to comply with the federal regulations by determining the appropriate level of staffing for Partners in Nutrition. But, because MDE did not deny Partners in Nutrition's application on the ground of lack of appropriate staffing, this error does not appear to have been prejudicial and thus we do not reverse MDE's decision on this basis. *See, e.g., Mass. Trustees of E. Gas & Fuel Assocs. v. United States*, 377 U.S. 235, 248, 84 S.Ct. 1236, 1245, 12 L.Ed.2d 268 (1964) (finding no basis for reversal "when a mistake of the administrative body is one that clearly had no bearing on the procedure used or the substance of decision reached"); *In re La-Fond*, 390 N.W.2d 321, 324 (Minn. App. 1986) (declining to reverse administrative decision based on nonprejudicial error); *cf.* Minn. Stat § 14.69 (2016) (allowing reversal of contested-case decision for error prejudicing substantial rights).

*Legal Standards*

 The applicable definition of financial viability set forth in the federal regulations is whether an organization "has adequate financial resources to operate the CACFP on a daily basis, has adequate sources of funds to continue to pay employees and suppliers during periods of temporary interruptions in Program payments and/or to pay debts when fiscal claims have been assessed against the institution, and can document financial viability (for example, through audits, financial statements, etc.)." 7 C.F.R. § 226.6(b)(1)(xviii)(A)(2). As is explained above, the USDA has made clear that the financial-viability standard does not require organizations to demonstrate the ability to fund CACFP expenses with nonprogram funds. Significantly, the regulations require an organization to have "adequate financial resources" for daily operations and "adequate sources of funds" to withstand interruptions to CACFP funding, *id.*; the regulations do not require an organization to have any specific level of capitalization or assets. And, although the regulations require that an organization document financial viability, "for example through audits, financial statements, etc.," *id.*, the regulations do not require specific forms of documentation of financial viability. Rather, as for the other performance standards, the financial-viability requirement sets a general standard that a state agency must apply in its discretion considering all the factual circumstances. *Id.*, § 226.6(b)(1)(xviii).

MDE is charged by the federal regulations with determining whether the finan-

---

ization responsible for administrative of CACFP in one or more facilities).

5. MDE has not promulgated any administrative rules in relation to the CACFP. Although staffing levels is a topic for which promul-

gation appears necessary, both MDE and other stakeholders may benefit from rules governing MDE's application procedure generally.

cial-viability standard provided in the federal regulations is met. Although MDE purportedly applied this standard in initially denying Partners in Nutrition's application, MDE also noted its "concerns about dependence on federal food program reimbursement being the primary source of income for a new organization." This language suggests that MDE imposed a more stringent standard on Partners in Nutrition in initially denying the application, essentially requiring Partners in Nutrition to establish that it was financially solvent without reliance on CACFP funds. As we explain above, the USDA has expressly endorsed the view that organizations may rely on CACFP funds as their primary source of funding.

On remand from the appeal panel,[6] MDE adopted another more stringent standard, notifying Partners in Nutrition that it would be required to demonstrate a 1:1 ratio of assets to liabilities, a positive cash flow, and a 2:1 ratio of total liabilities to total unrestricted net assets. These ratios appear nowhere in the federal regulations. Moreover, requiring certain levels of assets and cash flow is inconsistent with the USDA's guidance that a new organization need only identify sufficient financial resources to continue paying employees during periods of temporary interruptions in CACFP funding and that a state agency should not deny a new organization's application solely based on its lack of nonprogram revenue. Furthermore, as Partners in Nutrition points out, MDE is precluded by the federal regulations from imposing more restrictive requirements on CACFP applicants without federal approval, and, even with that approval, MDE may not adopt such requirements without promulgating rules. *See* 7 C.F.R. § 226.25(b) (providing that any additional requirements imposed by states must not be inconsistent with federal regulations, must be approved by a regional office of food and nutrition service, and must not deny the program to an eligible institution); Minn. Stat. §§ 14.02, .05 (stating rulemaking requirements).

■ Also on remand, MDE declined to rely on Partners in Nutrition's projections for its operations of the CACFP or the opinions of Partners in Nutrition's financial expert. Nothing in the federal regulations precludes an applicant from relying on financial projections to demonstrate financial viability. And precluding such reliance is contrary to the USDA's guidance that an organization should be able to rely on CACFP reimbursements as its primary source of funding.

■ MDE argues, echoing the appeal panel's mootness analysis, that Partners in Nutrition's challenges to MDE's methodology are "irrelevant and baseless" because MDE never applied the new methodology because Partners in Nutrition did not submit requested documents. But MDE did apply the standard, by requiring the submission of the documents and by subsequently denying the application because it could not determine the ratios articulated as its methodology.

Federal regulations establish a relatively minimal standard for financial viability. MDE does not have the discretion to create its own unduly restrictive test. For each of the foregoing reasons, we conclude that MDE erred by applying a legal standard separate from, and more stringent

---

6. The appeal panel stated that MDE "never outlined to PIN the standards by which it would be measured" in relation to financial viability. This statement is not entirely accurate, because MDE had referenced the standard from the federal regulations in denying Partners in Nutrition's application. What MDE failed to do consistently was explain its application of that standard to Partners in Nutrition's application.

than, the applicable federal regulations. Because MDE's procedure and the legal standards it applied are inconsistent with the federal regulations and otherwise unauthorized, MDE's decision was based on erroneous theories of law and must be reversed.

## II. MDE's decision is arbitrary and capricious.

■ "[A]n agency ruling is arbitrary and capricious if the agency (a) relied on factors not intended by the legislature; (b) entirely failed to consider an important aspect of the problem; (c) offered an explanation that runs counter to the evidence; or (d) the decision is so implausible that it could not be explained as a difference in view or the result of the agency's expertise." *Citizens Advocating Responsible Dev. v. Kandiyohi Cty. Bd. of Comm'rs*, 713 N.W.2d 817, 832 (Minn. 2006). Partners in Nutrition asserts that MDE's decision was arbitrary and capricious because it relied on criteria not included in the federal regulations and failed to consider all the evidence submitted by Partners in Nutrition on the issue of financial viability.

■ As we explain above, the financial-viability standard focuses on whether an organization has "adequate financial resources to operate the CACFP on a daily basis, has adequate sources of funds to continue to pay employees and suppliers during periods of temporary interruptions in Program payments and/or to pay debts when fiscal claims have been assessed against the institution, and can document financial viability (for example, through audits, financial statements, etc.)." 7 C.F.R. § 226.6(b)(1)(xviii)(A)(2). And the USDA has provided guidance that an organization may rely on CACFP funds as its primary source of income so long as it has sufficient resources to pay employees and suppliers

during temporary interruptions to funding and to pay fiscal claims.

To demonstrate its ability to pay employees, suppliers, and fiscal claims, Partners in Nutrition informed MDE of its forgivable $1 million line of credit provided by one of its founders, its committed and anticipated non-program revenue, and its anticipated funding from grants. Both the line of credit and anticipated revenues are financial resources and sources of funds that Partners in Nutrition could use to pay employees, suppliers, and fiscal claims. *See, e.g.*, *American Heritage Dictionary of the English Language* 710 (defining "funds" as "[a]vailable money, ready cash"); 1495 (defining "resources" as "an available supply, especially of money, that can be drawn on when needed") (5th ed. 2011). MDE failed to take into account any of these financial resources in determining whether to grant Partners in Nutrition's application, and the MDE appeal panel concluded that these resources were irrelevant to the analysis under the federal regulations. Furthermore, as we explain above in discussing MDE's legal errors, MDE relied on factors not intended by the federal regulations. Accordingly, we agree with Partners in Nutrition that MDE acted in an arbitrary and capricious manner in denying Partners in Nutrition's application, and that, for this additional reason, MDE's decision must be reversed.

## III. The proper disposition is reversal with a remand for MDE to redetermine Partners in Nutrition's application.

■ Partners in Nutrition requests this court to reverse and remand "with instructions to allow [Partners in Nutrition] to sponsor CACFP sites without condition or limit." We are not unsympathetic to this request. More than 18 months have passed since Partners in Nutrition began

the application process with MDE. The federal regulations require that MDE make a decision on a complete application within 30 days. 7 C.F.R. § 226.6(b)(3). Partners in Nutrition is understandably frustrated and is entitled to a prompt decision under correct legal standards and in consideration of all of the facts. Moreover, it appears that Partners in Nutrition has submitted substantial evidence that would support granting its application. Nevertheless, we are unable to grant the precise relief that Partners in Nutrition requests.

In support of its argument for a remand with instructions to allow its sponsorship, Partners in Nutrition cites a case in which a county board denied a conditional-use permit for reasons outside the scope of a previous judicial remand for additional findings. *Interstate Power Co. v. Nobles Cty. Bd. of Comm'rs*, 617 N.W.2d 566, 580 (Minn. 2000). The supreme court thus concluded that "there remains no permissible basis in the record on which to deny a permit." *Id.* In this case, MDE applied incorrect legal standards and failed to consider all of the evidence of financial viability. But this court is not in possession of the entire administrative record and thus not in a position to determine whether there is a "permissible basis in the record on which to deny" Partners in Nutrition's application.[7] Thus, it is appropriate to remand to MDE for application of the correct standards and consideration of all of Partners in Nutrition's submissions.

---

7. The record submitted to this court is incomplete particularly with respect to documents submitted to MDE before the first appeal panel hearing on March 28. Because certiorari review was sought for denial of Partners in Nutrition's CACFP application, a complete administrative record would have included all documents submitted to MDE by Partners in Nutrition beginning with the application and continuing through both appeal-panel decisions. In response to a request from Partners

in Nutrition, MDE amended the record to include certain financial projections of Partners in Nutrition's expert that were referenced in the August 18, 2016 final order from the appeal panel. Partners in Nutrition did not seek to further supplement the record, and it is Partners in Nutrition's burden to ensure that this court has an adequate record on appeal. *Mesenbourg v. Mesenbourg*, 538 N.W.2d 489, 494 (Minn. App. 1995).

## DECISION

MDE's decision denying Partners in Nutrition's CACFP application is based on erroneous theories of law and arbitrary and capricious. Accordingly, we reverse and remand for MDE's redetermination of the application. Partners in Nutrition's application has already been determined to be complete, and no further proceedings are necessary. Given the substantial delay in this matter and the 30-day regulatory deadline for application decisions, MDE should issue its decision on remand promptly and in no event later than 30 days after the entry of judgment on appeal.

**Reversed and remanded.**